IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JAY GAGE, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:24-CV-108-RWS-JBB |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are Plaintiff Jay Gage, Jr's objections (Docket No. 16) to the Magistrate Judge's Report and Recommendation (Docket No. 13) ("R&R"). Plaintiff filed this civil action pursuant to the Social Security Act ("the Act"), Section 405(g), seeking judicial review of the Commissioner's denial of Plaintiff's application for social security benefits. The case was referred to United States Magistrate Judge J. Boone Baxter in accordance with 28 U.S.C. § 636.

**BACKGROUND**

Plaintiff's application for supplemental security income ("SSI") was denied at the initial level in October 2023, and at the reconsideration level in December 2023. Docket No. 7 ("Tr.")[1] at 53–82. At the initial level, state agency medical consultant Laurence Lignon, M.D., determined

---

[1] Defendant Commissioner of Social Security filed a certified electronic copy of the administrative transcript as the answer to Plaintiff's complaint. Docket No. 7; *see* Docket No. 7-1 (certification); Docket No. 7-2 (transcript index); Docket No. 7-3 (transcript pages 1–52); Docket No. 7-4 (transcript pages 53–72); Docket No. 7-5 (transcript pages 73–160); Docket No. 7-6 (transcript pages 161–183); Docket No. 7-7 (transcript pages 184–278); Docket No. 7-8 (transcript pages 279–499); Docket No. 7-9 (transcript pages 500–948). The Court hereby refers to all of Docket No. 7 and its exhibits as "Tr." while using the pagination of the transcript.

that Plaintiff retained the exertional capacity to perform medium level work.[2] Tr. at 58–59. According to Dr. Lignon, Plaintiff could stand and/or walk (with normal breaks) for about six hours of an eight-hour workday. Tr. at 58. With respect to mental impairments, state agency medical consultant Henry Hanna, Ph.D., found that Plaintiff had moderate limitations related to interacting with others and adapting or managing himself. *Id.* at 57. Dr. Hanna found mild limitations in understanding, remembering, or applying information; and concentrating, persisting, and maintaining pace. *Id.* The evidence Dr. Hanna reviewed included the September 12, 2023 consultative examination report from NeCole Rivers, Ph.D. Tr. at 57, 620–624. Dr. Hanna noted that, per Dr. Rivers's report, Plaintiff's memory was intact. *Id.* at 60. Dr. Hanna concluded: "However, it is reasonable to conclude that when the claimant's psychiatric sxs [symptoms] are in the ascendancy, the most the claimant would be able to do is to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes." *Id.*

At the reconsideration level, state agency medical consultant Gulnara Martorella, M.D., determined in December 2023 that Plaintiff physically retained the capacity to perform medium level work. *Id.* at 68–69, 71. According to Dr. Martorella, Plaintiff could stand and/or walk (with normal breaks) for about six hours of an eight-hour day. *Id.* at 68. State agency medical consultant Walt Mercer, Ph.D., found that Plaintiff had moderate limitations in his ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. *Id.* at 67. He had mild limitations in his ability to understand, remember, or apply information. *Id.* Dr. Mercer determined

---

[2] Medium level work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Social Security Ruling ("SSR") 83-10.

that Plaintiff could understand, remember, and carry out detailed, but not complex, instructions. *Id.* at 70.

Plaintiff's attorney represented Plaintiff at the June 13, 2024 administrative hearing. *Id.* at 17, 34–52. Plaintiff and a vocational expert testified at the hearing. *Id.*

On June 25, 2024, an Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff had not been under a disability, as defined in the Act, since February 22, 2023, through June 25, 2024. *Id.* at 17–29. Applying the five-step sequential evaluation, the ALJ first found Plaintiff "ha[d] not engaged in substantial gainful activity since February 22, 2023, the application date." *Id.* at 19. At step two, the ALJ found Plaintiff's "obesity, osteoarthritis left foot, autoimmune disorder and/or fibromyalgia, diabetes mellitus, obstructive sleep apnea, restrictive airway disease, schizoaffective disorder, and posttraumatic stress disorder (PTSD)" were severe impairments. *Id*. With respect to Plaintiff's fibromyalgia, the ALJ expressly confirmed that he considered Social Security Ruling ("SSR") 12-2p (2012) (Evaluation of Fibromyalgia). *Id.* at 20 ("Regarding the claimant's fibromyalgia, I have considered Social Security Ruling 12-2p.").

At step three, the ALJ determined Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* The ALJ also found that Plaintiff had moderate limitations in each of the four broad areas delineated in the "B" criteria of the mental impairment listings. *Id.* at 20–22.

After considering the record, the ALJ found that Plaintiff's physical and mental impairments resulted in exertional and non-exertional functional limitations. *Id.* at 22. More specifically, the ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> lift, carry, push, pull, up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk and sit for 6 hours each in an 8-hour workday. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can

>frequently reach, handle, finger, and feel with the bilateral upper extremities. The claimant cannot tolerate any exposure to workplace hazards such as unprotected heights and moving mechanical parts. The claimant must avoid concentrated exposure to humidity, extreme heat, and atmospheric conditions as defined in the Dictionary of Occupational Titles (DOT). The claimant is limited to understanding, remembering, and carrying out simple instructions but not at a specific production rate such as on an assembly line. The claimant is limited to occasional interaction with coworkers and supervisors but is unable to tolerate interaction with the public. The claimant can tolerate occasional changes in a routine work setting.

*Id.*

The ALJ found Plaintiff had "no past relevant work," and therefore had no transferable skills. *Id.* at 27. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including housekeeping cleaner, cafeteria worker, and price marker. *Id.* at 27–28.

Plaintiff requested a review of the ALJ's decision, and the claim was denied by the Appeals Council on July 16, 2024. Tr. at 1–6, 11–13. Thus, the ALJ's decision became the Commissioner's final decision for purposes of the Court's review pursuant to 42 U.S.C. § 405(g).

On August 2, 2024, Plaintiff filed this case seeking judicial review of the Commissioner's decision. Docket No. 1. Both parties filed briefs. Docket Nos. 11, 12. The Magistrate Judge entered an R&R on August 15, 2025, finding both of the issues Plaintiff presented for review to be without merit. *See, e.g.*, Docket No. 13 at 3–4, 9 (addressing (1) the ALJ's failure to properly address Plaintiff's fibromyalgia and resulting limitations in his RFC assessment and (2) the ALJ's failure to properly consider Plaintiff's mental illnesses and his non-exertional limitations); *see also* Docket No. 11 at 3, 15. Plaintiff filed objections to the R&R on September 5, 2025. Docket No. 16.

## LEGAL STANDARD

### I. Review of the Magistrate Judge's Report and Recommendation

The Court must conduct a *de novo* review of all portions of the Magistrate Judge's report and recommendation that a party has properly objected to. *See* 28 U.S.C. § 636(b)(1)(C) (district

judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). As to any portion for which no objection is filed, the Court reviews for clearly erroneous factual findings and conclusions of law. *Poe v. Bock*, No. EP-17-CV-00232-DCG, 2018 WL 4275839, at *2 (W.D. Tex. Sept. 7, 2018) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); also citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006) ("A finding is clearly erroneous only if it is implausible in the light of the record considered as a whole.")).

## II.     Review of the Commissioner's Decision

"Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied." *L. v. Kijakazi*, No. 4:21-CV-02407, 2022 WL 4543200, at *2 (S.D. Tex. Sept. 28, 2022) (citations omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)) (citations omitted). It is "more than a scintilla but less than a preponderance." *Kijakazi*, 2022 WL 4543200, at *2 (quoting *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quotations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 at 103.

Courts weigh four elements of proof to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education,

and work history." *Kijakazi*, 2022 WL 4543200, at *2 (quoting *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995))).

"A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Even so, the "substantial evidence" standard is "not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings." *Id.* (citing *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)). A reviewing court must still "scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings." *Id.* (citing *Singletary*, 798 F.2d at 823). "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Id.* (quoting *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009)).

**III.   Social Security Evaluation Process**

In evaluating a disability claim, the ALJ conducts a five-step sequential analysis to determine whether: "(1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–448 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing he has a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or

not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1); *see Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018).

The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). "The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (internal citations and quotation marks omitted). To be clear, however, while ALJs must consider the combined effect of both severe and non-severe limitations, "the ALJ does not have to include those limitations in the RFC if there is insufficient evidence that they produce limiting effects." *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *8 (E.D. Tex. Dec. 12, 2022), *R&R adopted*, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023) (quoting *Sistrunk v. Kijakazi*, No. 3:21-CV-413, 2022 WL 3045315, at *2 (S.D. Miss. Aug. 2, 2022); also citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (explaining that the ALJ is not required to incorporate limitations in the RFC the ALJ finds unsupported by the record)).

## ANALYSIS

### I. Summary of the Magistrate Judge's Report and Recommendation

In his opening brief, Plaintiff raised two issues for review. Docket No. 11. On the first issue, Plaintiff argued the ALJ erred in discrediting Plaintiff's fibromyalgia and failed to appropriately address the symptoms of Plaintiff's fibromyalgia which are significant non-

exertional limitations affecting Plaintiff's ability to meet the demands of jobs other than the strength demands. Docket No. 11 at 5–7. Plaintiff relied on the February 8, 2024 Medical Opinion Re: Ability to Do Work-Related Activities (Physical) completed by Nurse Practitioner Cheyenne Autry at Genesis PrimeCare, arguing the ALJ erred in finding the opinion unpersuasive. *Id.* at 11–12. Plaintiff also relied on his hearing testimony regarding his pain and problems with using his hands. *Id.* at 14–15. On the second issue, Plaintiff contended the ALJ did not adequately discuss Plaintiff's mental illnesses and non-exertional impairments at step three, which resulted in an improper determination of Plaintiff's RFC. *Id.* at 15–23.

In the R&R, the Magistrate Judge noted the ALJ acknowledged Plaintiff's diagnosis of fibromyalgia and found it a severe impairment at step two of the five-step evaluation process. Docket No. 13 at 5; *see also* Tr. at 19–20 (noting the January 2023 record documenting joint pain and a rheumatology consultation consistent with fibromyalgia and not inflammatory arthritis). Noting the absence of specific criteria under the two primary tests for establishing fibromyalgia as a medically determinable impairment, the ALJ declined to find the mere diagnosis of fibromyalgia meant Plaintiff was disabled *per se* at step three. Docket No. 13 at 5; *see also* Tr. at 20–21.

Additionally, the Magistrate Judge noted that any error in the ALJ's initial analysis of Plaintiff's fibromyalgia at step three would be harmless because the ALJ proceeded to consider the associated symptoms and limitations of Plaintiff's fibromyalgia in the RFC assessment. Docket No. 13 at 6 (citing *Jaynes v. Commissioner of Social Security*, 2021 WL 12310605, at *6 (E.D. Tex. 2021; *Gibbons v. Colvin*, 2013 WL 1293902, at *16 (N.D. Tex. 2013)). The Magistrate Judge noted the ALJ's RFC explicitly incorporated various physical limitations that would encompass the symptoms commonly associated with fibromyalgia (limitations particularly related to lifting, carrying, standing, walking, sitting, postural movements, and manipulative functions), and the ALJ properly evaluated the opinion of Nurse Practitioner Autry in making his RFC assessment. *Id.* at

Page **8** of **14**

7–8 (citing Tr. at 22). The Magistrate Judge found substantial evidence supports the ALJ's RFC assessment, and the ALJ's consideration of Plaintiff's fibromyalgia and its resulting limitations was proper and consistent with legal standards. *Id.* at 8.

Regarding Plaintiff's mental illnesses, the Magistrate Judge found the ALJ's evaluation of the limitations was proper and the RFC assessment, which included additional non-exertional limitations, was supported by substantial evidence. *Id.* at 9. The Magistrate Judge noted, among other things, the ALJ found the state agency psychological consultants' opinions "unpersuasive" to the extent the consultants opined Plaintiff retained the ability to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes. *Id.* at 10; *see also* Tr. at 24 (noting the opinions were "unsupported by the referenced moderate limitations in interacting with others, in adapting and managing self, and in concentrating, persisting and maintaining pace," and were "inconsistent with the reported irritability and anger outburst, and [] failed to adequately consider the associated fatigue and pain in combination with the mental health symptoms"). The ALJ's mental RFC was more restrictive and limited Plaintiff to simple instructions, occasional interaction with coworkers and supervisors (no interaction with public), and occasional changes in the work setting. Docket No. 13 at 12; *see also* Tr. at at 27. The Magistrate Judge held the ALJ's evaluation of the mental health evidence of record was well-supported. *Id.* at 12.

## II.    Objections

In his objections, Plaintiff addresses only the first issue he presented for judicial review— that the ALJ failed to properly address the significant non-exertional limitations due to Plaintiff's fibromyalgia. Docket No. 16 at 1–6. Specifically, Plaintiff argues that the ALJ did not properly apply SSR 12-2p because an ALJ must apply both the 1990 and 2010 tests to determine whether claimant's fibromyalgia is a medically determinable impairment. *Id*. at 3–4. Plaintiff also

specifically points out that, despite the ALJ's RFC assessment, his rheumatologist, Dustin A. Stidger, M.D., found in February 2024 that Plaintiff had "[s]oft tissue tenderness in bilateral epicondyles, upper arms, shoulders, upper trapezius, clavicles, bilateral trochanters, thighs, inferomedial knees, and calves." *Id.* at 5 (citing Tr. at 694). The Court addresses both of these issues below.

### A.  Social Security Ruling 12-2p

The ALJ properly applied both 1990 and 2010 tests established by SSR 12-2p.[3] The ALJ's step three analysis confirmed that the ALJ explicitly considered SSR 12-2p. Tr. at 20–21. Applying both of the tests, the ALJ stated that the medical evidence of record "does not specify that Plaintiff had at least 11 positive tender points on physical examinations" and also "fails to reflect repeated manifestations of six or more fibromyalgia signs or co-occurring conditions." *Id.* (citing Tr. at 684–729 [Ex. 13F]). Noting Plaintiff had been diagnosed with fibromyalgia, and further noting that he was considering the intensity and persistence of Plaintiff's pain, the ALJ stated the record fails to reflect Plaintiff's fibromyalgia pain resulted in an inability to ambulate or perform fine and

---

[3] Social Security Ruling 12-2p establishes two tests based on criteria published by the American College of Rheumatology ("ACR") and provides that a person will have an medically determinable impairment of fibromyalgia if "(1) they have an acceptable diagnosis from a licensed physician who conducted a physical exam and reviewed the person's medical history, and (2) if that diagnosis is supported by evidence meeting either of the two ACR tests." *S.T. v. Comm'r, Soc. Sec. Admin.*, No. 3:24-CV-2371-BR, 2025 WL 935574, at *2 (N.D. Tex. Mar. 27, 2025) (citations omitted). Each test requires a history of widespread pain and evidence that disorders other than fibromyalgia were excluded as potential causes of the claimant's symptoms. *Id.* at *3 (citations omitted). "They differ in that the first test (the '1990 Test,' because it is based on criteria published by the ACR in that year) requires that a physician identify at least eleven 'tender points' at which a claimant experiences pain in response to the application of light pressure." *Id.* "The second test (the '2010 Test'), by contrast, requires 'repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.' " *Id.* (citations omitted).

gross movements effectively. *Id.* (noting physical examinations remained generally normal regarding gait, motor strength, spasms, and sensation).

Further, the case relied upon by Plaintiff for its assertion that both tests of SSR 12-2p must be applied is distinguishable. Docket No. 16 at 4 (citing *Jessica M. v. O'Malley*, No. 4:23-CV-3702, 2024 WL 4860806 (S.D. Tex. Nov. 20, 2024). There, the ALJ erroneously decided at step two that the plaintiff's fibromyalgia did not meet the requirements for a medically determinable impairment, and the subsequent RFC assessment was "skewed" by the ALJ's inability to consider whether the plaintiff's fibromyalgia provided an objective basis for the plaintiff's statements about the severity of her symptoms. *Jessica M.*, 2024 WL 4860806, at *5–6. The ALJ also failed to conduct the necessary analysis under SSR 12-2p, which was error. *Id.* at *5.

Here, the ALJ found Plaintiff's fibromyalgia a severe impairment at step two. Tr. at 19–20 (stating Plaintiff's rheumatology consultation was consistent with fibromyalgia and not inflammatory arthritis). Substantial evidence, including the record from Dr. Stidger, supports the ALJ's step two severity finding. *See* Tr. at 19, 26, 695–697. As discussed above, the ALJ went on to discuss SSR 12-2p at step 3 and applied both tests. *See* Tr. at 20–21.

Importantly, as pointed out by the Magistrate Judge, the ALJ also accounted for Plaintiff's fibromyalgia and associated limitations in his RFC analysis. Docket No. 13 at 6 (citing *e.g.*, Tr. at 22, 25, 26)). Therefore, to the extent the ALJ made any error in his initial analysis of Plaintiff's fibromyalgia at step three, it would be harmless. *Id.* (citing *Jaynes*, 2021 WL 12310605, at *6; *Gibbons*, 2013 WL 1293902, at *16). The ALJ's RFC assessment incorporated limitations related to lifting, carrying, standing, walking, sitting, postural movements (stooping, kneeling, crouching, crawling), and manipulative functions (reaching, handling, fingering, feeling). Tr. at 22. As urged by the Magistrate Judge, these limitations directly address the types of physical restrictions that

would arise from widespread pain, fatigue, and joint issues characteristic of fibromyalgia. Docket No. 13 at 7.

### B.  Medical Evidence the ALJ Considered

The ALJ properly evaluated the evidence and, specifically, the significant non-exertional limitations due to Plaintiff's fibromyalgia. In five pages of detailed analysis (Tr. at 22–27) regarding his RFC assessment, the ALJ discussed, among many other records, the February 5, 2024 medical record from Dr. Stidger that indicated the examination was consistent with fibromyalgia syndrome with no clinical evidence of inflammatory arthritis. Tr. at 26; *see also id.* at 695 [Ex. 13F/12]. The ALJ noted that physical examination "documented tenderness in Plaintiff's joints and muscle but with no swelling, deformity, or edema," and "there was no crepitus or reduced range of motion in the joints." *Id.* at 26. Elsewhere, the ALJ noted Dr. Stidger recommended neuropathic pain medication and routine low impact exercise as management. *Id.* at 20.

The ALJ did not consider only evidence from Dr. Stidger. The ALJ also expressly considered the February 8, 2024 form completed by Nurse Practitioner Autry, wherein she opined Plaintiff was capable of occasionally lifting and carrying fifty pounds and frequently lifting and carrying twenty-five pounds (within the medium exertional level) but could stand and/or walk about two hours and sit about four hours in an eight-hour workday with a need for more than normal breaks. *Id.* at 25; *see id.* at 732–735. The ALJ explained in detail why he found the form unpersuasive. *Id.* at 25. The ALJ explained that the form was not well-supported, noting the references to neuralgia, joint pain, weakness, and fatigue were not supported by objective findings of deficits in motor strength, sensation, muscle spasms, decreased range of motion, or gait. *Id.* (further noting treatment records from Genesis PrimeCare and Nurse Practitioner Autry

documented consistently normal findings on physical examination). The ALJ also noted the form was not consistent with the February 2024 clinical findings of Dr. Stidger. *Id.*

In sum, Plaintiff's objections—which raise arguments fully considered by the Magistrate Judge in the R&R (Docket No. 13)—are without merit. Under a substantial evidence standard, whether or not it might be possible to evaluate evidence differently and/or possibly reach a different conclusion is immaterial. *See* 42 U.S.C. § 405(g); *Brown*, 192 F.3d at 496. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). For there to be a finding of no substantial evidence, there must be a conspicuous absence of credible choices or no contrary medical evidence. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). That is not the case here. Substantial evidence and applicable authority support the ALJ's June 25, 2024 decision. *See, e.g.*, Docket No. 13 at 7 (citing Tr. at 25–26).

## CONCLUSION

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections (Docket No. 16) are **OVERRULED**. It is further

**ORDERED** that the Report of the Magistrate Judge (Docket No. 13) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Commissioner's decision in the above-captioned civil action is **AFFIRMED**.

So **ORDERED and SIGNED** this 30th day of September, 2025.

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE